**Joseph FRANCO**

v.

**KAUFMAN AND BROAD, INC., et al.**

**No. 88–399–Appeal.**

Supreme Court of Rhode Island.

March 12, 1990.

John D. Archetto (Asquith, Merolla, Anderson, Archetto & Kane) Providence, for plaintiff.

John G. Rallis and Paul V. Reynolds (Boyer, Reynolds & DeMarco), Providence, for defendants.

OPINION

MURRAY, Justice.

The plaintiff, Vito Scarpelli (Scarpelli), as executor of the estate of Joseph Franco (Franco),[1] appeals from a Superior Court

---

1. In light of the death of Joseph Franco, the original plaintiff, we shall use the word "plain-   tiff" to refer only to Vito Scarpelli.

justice's granting of the defendants' motion for a directed verdict. The plaintiff claims that the trial justice erred in interpreting G.L.1956 (1985 Reenactment) § 9–19–27 as not allowing the admission of an out-of-state doctor's affidavit. The plaintiff also objects to the trial justice's alternative ruling that the affidavit is inadmissible as not sufficiently establishing a causal connection between the injury and the amputation of Franco's leg. The plaintiff's final claim is that the trial justice abused his discretion in denying the plaintiff's motion to pass in order to allow him to secure the personal appearance of the out-of-state doctor. We find that the affidavit was correctly excluded because the assertions in the affidavit were insufficient to stand on their own as evidence of the cause of Franco's amputation. We therefore decline to address the plaintiff's first argument regarding the interpretation of § 9–19–27. Moreover we find that the trial justice did not abuse his discretion in denying the plaintiff's motion to pass under the facts of this case.

This case arose from the following facts. In September 1980 Franco moved into an apartment equipped with a raised toilet and guard rail in the bathroom for the use of elderly and/or handicapped residents. At this time Franco was sixty-one years old and diabetic but was not severely disabled. The apartment was owned by defendant Spring Villa Associates and managed by defendant Kaufman and Broad Asset Management, a subsidiary of Kaufman and Broad, Inc. Franco alleged that on March 1, 1981, he fell in the bathroom and struck the heating duct at the base of the wall with his right toe, which occurrence caused a laceration to that toe. Franco claimed that the injury to his toe was caused directly and proximately by the height of the toilet and by a handicap-guard rail on the wall that he claimed was loose and improperly attached at the time of the incident.[2]

Franco sought medical treatment for the cut which became infected. He was treat-ed for the bruises at Tri–Town Health Center in North Providence by Dr. Eric B. Einstein. His condition worsened. The toe and eventually his right foot became infected. The lower portion of his right leg was then amputated at Rhode Island Hospital. Franco claimed that the amputation was the result of his toe injury and his diabetic condition.

On December 23, 1982, Franco filed a complaint for personal injury in Providence County Superior Court. The complaint recited two counts against defendants. Count 1 stated that defendants were negligent in failing to maintain the premises in a condition fit for occupancy, and count 2 claimed that defendants had failed to notify Franco of a hidden defect in the apartment and that defendants had failed to correct the defective condition.

On April 6, 1987, Franco died,[3] and probate proceedings were instituted on his behalf. Franco's attorney filed a motion for continuance in this case due to Franco's death. The executor of Franco's estate, Scarpelli, was substituted as a party plaintiff, and in conjunction with the substitution the estate filed an amended complaint. Count 1 alleged that defendants failed to maintain the premises properly by allowing an unsafe and defective condition to exist on the leased premises. Count 2 alleged that a known hidden defect was concealed from Franco, and count 3 alleged negligent maintenance of the premises.

The case finally came to trial on February 10 and 11, 1988, before a jury. After opening statements by both sides, plaintiff offered in evidence an affidavit of Dr. Einstein, who had moved from the State of Rhode Island to Connecticut. The defendants then objected to the affidavit for the first time although they had received notice of the affidavit in June 1987. The trial justice sustained the objection finding that the affidavit was inadmissible. One reason for his ruling was the defendants' lack of

---

**2.** On December 30, 1983, plaintiff filed an amended answer admitting that there was no guard rail in the bathroom, because it had been removed at his own request prior to the date of the accident.

**3.** The cause of death is not a factor in this lawsuit.

opportunity to cross-examine the doctor because the defense could not subpoena an out-of-state witness. In addition the trial justice excluded the affidavit because it was insufficient to stand on its own as evidence of the causal connection between the injury and the amputation.

The plaintiff then made a motion to pass in order to secure the personal appearance of the doctor. The trial justice denied the motion. The plaintiff asked the court to note his exception and then rested. The defendants made a motion for directed verdict, and the court granted the motion. Without admission of the affidavit there was no evidence of a causal connection between the injury and the amputation.

In addressing the issue of the admissibility of the doctor's affidavit, we examine the case of *Parrillo v. F. W. Woolworth Co.*, 518 A.2d 354 (R.I.1986). In that case we set out the requirements for a medical expert's affidavit.

"Each affidavit must satisfy the requirements for expert medical testimony on its own and may not rely on separate evidence to supply missing links. * * *

"Since none of the affidavits provide sufficient evidence of proximate cause, they should have been excluded as incompetent evidence." *Id.* at 356.

■ In the instant case, plaintiff concedes that Dr. Einstein's affidavit did not connect the injured toe to the amputation of Franco's lower leg. Doctor Einstein's affidavit addresses only the treatment of an infected toe. The plaintiff contends that he would have submitted additional records of Rhode Island Hospital to establish the additional treatment required on Franco's toe and leg. Such information might have established the causal connection between the infected toe and the amputation, but absent this additional information Dr. Einstein's affidavit does not establish that the proximate cause of the amputation was the injured toe as required by *Parrillo*. As defense counsel stated at trial,

"There is nothing in [the affidavit] about falling off a commode, there's nothing in the history about striking his foot, his toes or any portion of his toes on the heating duct in the bathroom. There's nothing which would relate this incident to any bathroom accident. There's nothing which relates this incident, this stubbing of the toe, to a defective or loose handrailing for * * * handicapped people."

Doctor Einstein's affidavit was therefore properly excluded because it did not provide a clear causal connection between the injuries treated by the doctor and the alleged negligence of defendants.

The second issue we address is whether the trial justice abused his discretion in denying plaintiff's motion to pass in order to secure Dr. Einstein's presence in court. Generally this court will not interfere with procedures used at trial unless there is an abuse of discretion. *Hodosh v. Ford Motor Co.*, 477 A.2d 77, 79 (R.I.1984). We have also decided that the trial justice's discretion extends to decisions on motions to pass a case. *E.g., Thomas v. Jannarelli*, 109 R.I. 256, 283 A.2d 886 (1971).

■ The trial justice objected to passing the case primarily because it had been in the system since 1982. The case had already been delayed because of the death of the original plaintiff and the need to probate Franco's estate before naming an executor to proceed on his behalf. A jury had been selected and had heard opening statements before the plaintiff offered the affidavit into evidence. By disallowing the motion to pass at this time, the trial justice saved the case from further unnecessary delay.

Moreover, there is no evidence that the denial of the motion to pass prejudiced plaintiff's case. *See Flanzbaum v. Senco Products, Inc.*, 460 A.2d 15, 17 (R.I.1983). There is no evidence in the record that Dr. Einstein could have established the causal connection between the infected toe and the amputation even if he were present in court to testify since he was not the treating physician at the time of the amputation. If Dr. Einstein could have established the causal connection at trial, he should have done so in his affidavit upon which plaintiff was relying. The plaintiff had more than a

year to make the affidavit conform to the requirements of *Parrillo,* but he failed to do so.

The plaintiff also could have offered other evidence relating to the causal connection including the testimony of the treating physician at Rhode Island Hospital. He could have offered into evidence those hospital records that he said he would use to establish the additional treatment Franco's toe and leg required. Although the plaintiff asked the court to note his objection to the denial of his motion to pass, he made no offer of proof in regard to the content of Dr. Einstein's testimony. Instead he offered no additional information. Since the plaintiff failed to establish sufficient evidence of proximate cause, there is no evidence to support his case. The trial justice therefore ruled correctly in granting the defendants' motion for a directed verdict.

We find that the plaintiff's appeal is without merit, and the appeal is denied and dismissed. The judgment entered pursuant to the directed verdict is hereby affirmed.