Beverly OUELLETTE

v.

Orin V. CARDE et al.

No. 90–367–Appeal.

Supreme Court of Rhode Island.

July 9, 1992.

Frederick A. Costello, Warwick, for plaintiff.

Amedeo C. Merolla, Katherine A. Merolla, Asquith, Merolla, Anderson, Archetto & Kane, Providence, for defendants.

## OPINION

MURRAY, Justice.

This civil action in negligence is before the court on the defendants' appeal from a judgment entered in favor of the plaintiff. We affirm.

On March 18, 1986, defendant Orin V. Carde attempted to change the muffler and tailpipe of his 1979 Mercury Cougar.[1] The defendant parked his car in the closed garage connected to his home and elevated the back of the car with a hydraulic jack. He placed two stanchion jacks underneath the rear axle and removed the hydraulic jack so that the car's rear axle rested on the stanchion jacks. He blocked the front wheels of the car and unloosened the bolts connecting the tailpipe and muffler to the chassis. He was unable to remove the tailpipe, however, because the car chassis pressed too closely to the rear axle resting on the stanchion jacks to allow him to pull it free. To provide an adequate opening defendant placed a bumper jack underneath the right rear bumper and jacked the car up so that the right side of the rear axle was no longer resting on a stanchion jack. This position tilted the car at a precarious angle but created a space through which the tailpipe could pass.

The defendant again tried to remove the tailpipe, but it was rusted to the exhaust pipe and would not slide off. He began pulling on the muffler and exerted such pressure in attempting to wiggle it free that the right side of the car fell off the bumper jack onto the stanchion jack and trapped defendant underneath the car. Because of the angle at which the car fell, the gas tank landed on the right stanchion jack puncturing the tank and releasing approximately ten gallons of gas onto the garage floor. The defendant remained trapped under the car in a semiconscious state for an unknown period. He eventually recovered and worked himself free, and called the plaintiff, Beverly Ouellette, from the garage telephone. In the middle of the conversation he passed out, and plaintiff, a long time friend and neighbor, immediately drove to defendant's house. She entered the front door of the home and made her way to the garage through the laundry room. She nearly slipped in a puddle of

---

**1.** Orin V. Carde and Marie Carde are the named defendants in plaintiff's complaint. For pur-
poses of this appeal we refer to Orin V. Carde as the defendant.

gasoline on the garage floor as she entered the garage and found defendant lying on the ground beneath the dangling phone. She attempted to call a rescue squad but was unable to get a dial tone, and defendant became agitated. He told plaintiff that they should leave through the garage door and directed her to press the electric door opener. When the door was one-half to three-quarters open, the gas ignited in an explosion. Both plaintiff and defendant escaped but were severely burned. The plaintiff was taken directly to the emergency room where she was treated for third-degree burns to her left ankle and to both feet. She was released later that day but was readmitted one week later. She stayed in the hospital for fifteen days during which time she had a series of operations and a skin graft. She was subsequently released and entered a home-care program through which a nurse would visit and change her bandages three times a day. In addition to the physical injuries, plaintiff experienced extreme anxiety and panic attacks. She received treatment for anxiety over a three-year period and was still taking medication at the time of the trial.

The plaintiff filed a civil action in negligence in Kent County Superior Court on February 25, 1987. The complaint requested money damages for personal injuries sustained in the fire at defendant's home on March 18, 1986. A five-day jury trial commenced on March 27, 1990, during which defendant filed two motions for directed verdict. The trial justice denied the first motion and reserved decision on the second motion filed at the end of the presentation of evidence. The case was submitted to the jury on April 2, 1990, and the following day the jury returned a verdict in favor of plaintiff for $85,000 plus interest and costs. The court thereafter reconsidered and denied defendant's second motion for directed verdict. The defendant subsequently filed a motion for a new trial, which was also denied. On appeal defendant raises six issues. We address each issue separately.

I

The defendant's first claim is that the trial justice erred in prohibiting the defendant from arguing comparative negligence to the jury and in instructing the jury on the rescue doctrine. The defendant argues that Rhode Island's comparative-negligence statute incorporates the public-policy principles of the rescue doctrine and that the jury should have been instructed to apply standards of comparative negligence to plaintiff's case. The plaintiff responds that the rescue doctrine survives the adoption of comparative negligence because comparative negligence inadequately promotes the public policy of encouraging a person under no duty to rescue to save the life of a human being in peril.

The rescue doctrine is a rule of law holding that one who sees a person in imminent danger caused by the negligence of another cannot be charged with contributory negligence in a nonreckless attempt to rescue the imperiled person. 57A Am. Jur.2d *Negligence* § 1079 (1989). The doctrine was developed to encourage rescue and to correct the harsh inequity of barring relief under principles of contributory negligence to a person who is injured in a rescue attempt which the injured person was under no duty to undertake. *Wilson v. N.Y., N.H. & H.R.R. Co.,* 29 R.I. 146, 161, 69 A. 364, 371 (1908); *Willis v. Providence Telegram Publishing Co.,* 20 R.I. 285, 38 A. 947 (1897). In practice the doctrine may be used either to establish a plaintiff's claim that the defendant was guilty of actionable negligence in creating the peril which induced the rescue attempt or to eliminate the defenses of contributory negligence and assumption of risk. The instant case, however, raises the question of whether Rhode Island's adoption of the comparative-negligence doctrine, G.L.1956 (1985 Reenactment) § 9–20–4, requires that rescue-doctrine cases be adjudicated under standards of comparative negligence.

Comparative fault removes the harsh consequences of contributory negligence because a rescuer is not barred completely from recovery for negligently performing a rescue. Under a comparative-

negligence standard the trier of fact apportions fault among responsible parties, and the negligent rescuer is entitled to recover only that percentage of total damages for which the party creating the peril is responsible. The comparative-negligence doctrine, therefore, arguably incorporates this policy consideration of the rescue doctrine, but there is a split in authority whether the doctrine of comparative negligence fully addresses the other policy considerations of the rescue doctrine. *See* Annot., *Rescue Doctrine: Applicability and Application of Comparative Negligence Principles*, 75 A.L.R.4th 875 (1990). Most courts addressing this issue focus on the fact that comparative negligence removes the harsh consequences of contributory negligence and have ruled that a plaintiff who is negligent in performing a rescue should recover only a pro rata share of the damages sustained attributable to the defendant. *See, e.g., Zimny v. Cooper–Jarrett, Inc.*, 8 Conn. App. 407, 513 A.2d 1235 (1986); *Ryder Truck Rental, Inc. v. Korte*, 357 So.2d 228 (Fla. Dist. Ct.App.1978); *Sweetman v. State Highway Department*, 137 Mich. App. 14, 357 N.W.2d 783 (1984); *Pachesky v. Getz*, 353 Pa.Super. 505, 510 A.2d 776 (1986).

■ We are of the opinion, however, that the comparative-negligence doctrine does not fully protect the rescue doctrine's underlying policy of promoting rescue. No common-law duties changed as a result of the enactment of Rhode Island's comparative-negligence statute, and there is nothing other than an individual's moral conscience to induce a person under no legal duty to undertake a rescue attempt. The law places a premium on human life, and one who voluntarily attempts to save a life of another should not be barred from complete recovery. Only if a person is rash or reckless in the rescue attempt should recovery be limited; accordingly we hold that the rescue doctrine survives the adoption of the comparative-negligence statute and that principles of comparative negligence apply only if a defendant establishes that the rescuer's actions were rash or reckless. *See Allison v. Sverdrup & Parcel and Associates, Inc.*, 738 S.W.2d 440 (Mo. Ct.

App.1987). In adopting this reasoning we recognize that the oft quoted words of Justice Cardozo apply now as they did in 1921:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had." *Wagner v. International Railway, Co.*, 232 N.Y. 176, 180, 133 N.E. 437, 437–38 (1921).

■ In the instant case, defendant was not entitled to a jury instruction on comparative negligence unless plaintiff's rescue was rash or reckless. Because defendant did not assert that plaintiff acted recklessly, the trial justice did not err in denying defendant's requested jury instruction on comparative negligence.

## II

■ The defendant next asserts that the trial justice erred in charging the jury with only "but for" causation. The defendant claims that because the trial justice failed to give an instruction on foreseeability, the issue of proximate cause and foreseeability was never properly submitted to the jury. As error defendant argues that a foreseeability instruction in accordance with *Palsgraff v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928), as adopted by this court in *Radigan v. W.J. Halloran*, 97 R.I. 122, 128, 196 A.2d 160, 163 (1963), should have been charged to the jury. The plaintiff responds that the trial justice did instruct the jury on foreseeability.

Absent a showing otherwise, this court assumes that the jury followed and understood the instructions of the trial justice. *Rossi v. Hall*, 430 A.2d 1072 (R.I.1981); *Brunswick Corp. v. Sposato*, 120 R.I. 673, 389 A.2d 1251 (1978). Moreover, when a jury requests reinstruction on a specific

charge, the jury is presumed to understand all other charges for which it did not request reinstruction.

Applying these principles to the instant case, we find that the trial justice did not err. The trial justice's initial instructions adequately explained foreseeability. Specifically the trial justice stated:

"There has been discussion during the course of arguments with you with respect to something called foreseeability. Foreseeability relates to the natural and probable consequences of an act. To be held liable the defendant need only reasonably foresee that an injury or some type of injury may result from a dangerous condition on the premises. The particular kind of injury need not have been foreseen. Although a defendant is not, of course, expected to foresee the unforeseeable, he is charged with a duty to foresee that which a prudent person in like circumstances would have reasonably foreseen. The mere fact that an accident happened standing alone, ordinarily does not permit the jury to draw the inference that the accident was caused by the defendant's negligence. The plaintiff has the burden to demonstrate by a preponderance of the evidence that the defendant was negligent, and that such negligence was a proximate cause of the event in question."

After the jury retired to deliberate, the jury foreman requested reinstruction from the court on proximate cause and on the rescue doctrine. The court repeated these two charges only, and defendant claims error on the basis of the court's failure to reinstruct the jury with respect to foreseeability.

The claim is without merit. The jury did not request a reinstruction on foreseeability; therefore, the jury is presumed to have understood the initial foreseeability instruction and defendant was not entitled to have it repeated.

### III

The defendant's third claim is that the trial justice erred in admitting certain medical bills into evidence. The defendant claims that the affidavits used to enter medical bills from Kent County Memorial Hospital and from Dr. Klaus Haas failed to comply with G.L.1956 (1985 Reenactment) § 9–19–27 and that plaintiff was therefore precluded from entering the documents into evidence. The plaintiff contends that the bills were properly admitted under Rule 803(6) of the Rhode Island Rules of Evidence.

At trial plaintiff attempted to introduce medical records and bills from plaintiff's treatment for burns sustained in the accident. The plaintiff first attempted to introduce the records under § 9–19–27, but the supporting affidavits prepared by Dr. Haas did not comply with the statute and Dr. Haas was unavailable to testify. The trial justice excluded the documents, and in the alternative, plaintiff requested that the bills and records be admitted under Rule 803(6), the business-records exception to hearsay. The trial justice initially denied this request and ruled to exclude all medical affidavits. The following day, however, the trial justice reversed his decision in part and admitted the bills, but not the medical records, under Rule 803(6). The defendant objected, asserting that the bills failed to comply with § 9–19–27 and this court's decisions in *Parrillo v. F.W. Woolworth Co.*, 518 A.2d 354 (R.I.1986), and *Franco v. Kaufman and Broad, Inc.*, 571 A.2d 24 (R.I.1990). The defendant argued that § 9–19–27 controls the admissibility of medical affidavits and that the bills as medical affidavits could not be entered under any other evidentiary rule. The defendant further argued that the bills were inadmissible because there was no testimony or supporting affidavit offered to establish a causal relationship between defendant's act and plaintiff's injury. *See Parrillo*, 518 A.2d at 355–56.

A review of the record shows that the trial justice correctly refused to admit Dr. Haas's medical records and bills under § 9–19–27 because the supporting affidavits did not satisfy the statute's requirements. The trial justice did, however, correctly admit the medical bills, but not the records, into evidence under Rule 803(6). The plain-

tiff satisfied the foundation requirements of Rule 803(6) and properly authenticated the documents through testimony of the custodian of records for Kent County Hospital. The bills were thereafter admitted to show only the measure of damages sustained by plaintiff, and plaintiff was not allowed to use the bills to show the proximate cause between the fire and her injury. This admission of the bills under Rule 803(6) did not circumvent the requirement of § 9–19–27, as explained in *Parrillo,* that medical affidavits purporting to establish proximate cause be supported by properly documented affidavits or by direct testimony of the physician rendering the opinion. Accordingly the trial justice did not err in admitting the bills under Rule 803(6) as evidence of the measure of damages claimed by plaintiff.

### IV

The defendant's fourth claim of error concerns the reading of Fire Marshal Irving Owen's deposition testimony into the record. At trial plaintiff requested that Marshal Owen's deposition be read into the record. The evening before the deposition was to be read to the jury, the trial justice reviewed the deposition and ruled on each of the objections and motions made by the defense counsel at the taking of the deposition. The following morning the trial justice told opposing counsel that he had denied all of defendant's objections and motions and that he had preserved all issues contained in these objections for appeal. The trial justice then instructed plaintiff to read the deposition into the record without reference to defendant's objections. The defendant challenged this procedure, asserting that his objections at the deposition were preserved for trial and could be argued before the trial justice. The trial justice overruled defendant, and on appeal defendant asserts that Rule 32 of the Superior Court Rules of Civil Procedure provides a party with an absolute right to raise and argue before the trial justice all objections made at the taking of a deposition.

The defendant provides no authority in support of this assertion, and we find nothing in the record to indicate that the trial justice erred. The trial justice reviewed the deposition the evening before it was read into the record and considered each of defendant's objections and motions. The trial justice ruled against defendant in every instance and preserved each issue for appeal. The trial justice acted within his discretion in adopting this procedure, and a review of the specific rulings within the deposition that defendant challenges do not merit discussion.

### V

The defendant next asserts that the trial justice erred in allowing Dr. Paul Alexander to testify concerning plaintiff's psychiatric condition and in allowing John Marchetti, a social worker, to testify and to state medical opinion. The defendant asserts that Dr. Alexander was responsible for plaintiff's psychiatric treatment but that he delegated regular treatment of plaintiff to Marchetti. Based on this division of treatment defendant claims that Dr. Alexander is unable to testify concerning Marchetti's treatment of plaintiff because he lacks personal knowledge of her counseling with Marchetti and that Marchetti is unable to testify about plaintiff's psychiatric condition because Marchetti is not a doctor and therefore unqualified to give expert medical opinion.

Doctor Alexander is a medical physician qualified by the court as an expert in psychiatry and anxiety disorder. Doctor Alexander manages a group practice in which he supervises other psychiatrists, social workers, and a psychiatric nurse. The group works as a team, and in the instant case Dr. Alexander was the physician responsible for plaintiff's treatment. He conducted plaintiff's intake interview and thereafter referred her to Marchetti for counseling. Marchetti is a social worker specializing in face-to-face psychotherapy and treated plaintiff during regular psychotherapy sessions over a three-year period. He made notes of these sessions for Dr. Alexander and other members of the group to review. Doctor Alexander reviewed these notes on a regular basis and conduct-

ed periodic personal interviews with plaintiff in monitoring plaintiff's overall treatment.

The defendant's attempt to divorce the roles of Dr. Alexander and Marchetti misrepresents the medical treatment plaintiff received. Doctor Alexander was the physician responsible for plaintiff's treatment and was competent to testify concerning plaintiff's anxiety disorder and therapy. At trial defendant attempted to elicit specific details of plaintiff's counseling sessions with Marchetti from Dr. Alexander. Doctor Alexander was unable to answer those questions, and plaintiff made Marchetti available to testify. The court qualified Marchetti as an expert in psychotherapy, and defendant examined Marchetti extensively on the counseling sessions. Marchetti gave expert testimony only with respect to psychotherapy and did not give expert medical opinion. Accordingly the court did not err in allowing either Dr. Alexander or Marchetti to testify.

### VI

The defendant's final claim is that the trial justice erred in refusing to direct a verdict for defendant and in refusing to grant defendant's motion for a new trial. In support of this claim defendant asserts that plaintiff's injury was not foreseeable and that defendant was therefore not negligent as a matter of law. The plaintiff responds that this is a classic "rescue doctrine" case and that plaintiff's rescue attempt was a foreseeable consequence of defendant's negligence in creating a dangerous situation.

The rescue doctrine assigns the party who negligently creates a dangerous situation with responsibility for any rescuer injured in a reasonable rescue attempt. The party creating the danger is by law charged with foreseeing all nonreckless rescue attempts; therefore, the trial justice did not err in denying the defendant's motions for directed verdict and the defendant's motion for new trial.

Accordingly, the defendant's appeal is denied and dismissed. The judgment in favor of the plaintiff is affirmed, and the case is remanded to Superior Court.