**Matthew PETIKA and Penny Petika, His Wife, Appellants,**

v.

**TRANSCONTINENTAL INSURANCE COMPANY, a Corporation, Swank Associated Companies, Inc., a Pennsylvania Corporation, and Insurance Company of the State of Pennsylvania, Appellees.**

Superior Court of Pennsylvania.

Argued April 27, 2004.
Filed July 16, 2004.

Allan M. Cox, Pittsburgh, for appellants.

Kate Fagan, Pittsburgh, for Transcontinental, appellee.

BEFORE: HUDOCK, GANTMAN, and POPOVICH, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, Matthew Petika and his wife Penny Petika ("the Petikas"), ask us to determine whether the trial court erred in rendering a verdict in favor of Appellees, Transcontinental Insurance Company ("Transcontinental") and Swank Associated Companies, Inc. ("Swank"), in a declaratory judgment action to recover underinsured motorist ("UIM") benefits. Specifically, the Petikas challenge the trial court's interpretation and application of the "orientation" element of the "occupancy test," as promulgated in *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). We hold the trial court properly interpreted and applied the *Utica* test and determined Matthew Petika was not an "insured" under the subject policy. Therefore, he was not entitled to UIM benefits under that policy. Accordingly, we affirm the trial court's order entering declaratory judg-

ment in favor of Transcontinental and Swank.[1]

¶ 2 The trial court opinion sets forth the relevant facts of this case:

At the time of the accident on October 19, 2001, [ ] Matthew Petika was the driver of a water truck and was following Tracy Shroyer, who was driving a flatbed air truck upon which sand bags had been stacked. The two men and their vehicles had been part of a Swank maintenance crew which had worked all night on Interstate 64 West near Newport News, Virginia and were on their way back to drop the vehicles at an equipment yard prior to picking up their personal vehicles and going to their motel.

As the two trucks traversed a 'crossover' to move from the eastbound to the westbound lane of [I]–64, the lead truck ran over a pothole which caused a number of sand bags to spill on the 'fast,' left, lane of the highway, near the center line.

After exiting their vehicles, Matthew Petika and Tracey Shroyer observed a white van strike a corner of [ ]one of the sand bags, breaking the bag and causing the van to swerve toward the edge of the road. Shroyer and [Matthew] Petika realized that they had to act quickly so [Matthew] Petika moved eastward 100 to 120 feet along the berm of the highway, motioning traffic to slow down, while Shroyer and some other workers who had arrived began to try to clear the bags and spilled sand from the highway. After approximately five minutes, Shroyer heard sliding tires and people yelling. Shroyer ran over and saw [Matthew] Petika lying in front of a car in the grassy median area. Ac-

cording to other witnesses, the car had apparently been unable to slow down and had swerved between cars onto the median, where it struck Matthew Petika who was attempting to run away.

([The Petikas]' Brief in Support of Action for Declaratory Judgment, at 2–3.) [1]

1. To the extent that this summary differs from some of the deposition testimony, the discrepancies are insignificant for the purpose of this opinion.

(Trial Court Opinion, entered May 22, 2003, at 1–2). After settling with the tortfeasor, Matthew Petika submitted a claim for UIM benefits pursuant to a Transcontinental policy covering the Swank vehicle. Transcontinental denied the claim.

¶ 3 On September 11, 2002, Matthew Petika filed a complaint for declaratory judgment, and on November 26, 2002, Transcontinental and Swank filed an answer and counterclaimed for declaratory judgment. On May 22, 2003, following a bench trial on stipulated facts, the trial court entered declaratory judgment in favor of Transcontinental and Swank. Matthew Petika filed a timely post-trial motion for relief. On August 25, 2003, the trial court denied that motion; adopted its opinion of May 22nd; and entered its final order and judgment. This timely appeal followed.

¶ 4 The Petikas present the following issue for our review:

WHETHER, UNDER THE STIPULATED FACTS, THE TRIAL COURT ERRED IN FINDING THAT [MATTHEW PETIKA] FAILED TO SATISFY THE THIRD CRITERION ("VEHICLE" VS. "HIGHWAY/SIDEWALK" ORIENTATION) OF THE FOUR–PART ANALYSIS PROMUL-

1. Insurance Company of the State of Pennsylvania is not a party to this appeal.

GATED BY THE PENNSYLVANIA SUPREME COURT IN [*UTICA, SUPRA*], WHICH IS USED TO DETERMINE WHETHER ONE IS AN "OCCUPANT" OF A VEHICLE FOR PURPOSES OF UNDERINSURED MOTORIST COVERAGE?

(The Petikas' Brief at 3).

¶ 5 This appeal is subject to the following principles:

> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

Additionally,

> [we] will review the decision of the [trial] court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review. Furthermore, the interpretation of an insurance policy is a matter of law properly resolved in a declaratory judgment action.

*Erie Ins. Exchange v. Muff*, 851 A.2d 919, 925 (Pa.Super.2004) (internal citations omitted).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted).

¶ 6 The Petikas argue the undisputed evidence demonstrated that Matthew Petika had not terminated the use of his vehicle or severed his connection with it when the accident occurred. They claim the court erroneously concentrated on **why** Matthew Petika was out of his vehicle, whereas the "vehicle orientation" element of the *Utica* test required the court to focus on the extrinsic factors, which established Matthew Petika intended to return immediately to his vehicle after coping with the emergency situation at hand. The Petikas maintain the trial court misinterpreted the concepts of "vehicle orientation" and "highway/sidewalk orientation," as those terms are understood under prevailing Pennsylvania law. The Petikas conclude the trial court erred as a matter of law, and they are entitled to judgment in their favor. We disagree.

¶ 7 When interpreting insurance policies where coverage is extended to those "occupying" an insured vehicle at the time of the accident, our Supreme Court has adopted certain rules of law. *Curry v. Huron Insurance Company*, 781 A.2d 1255 (Pa.Super.2001). Specifically, "when a person is engaged in the lawful use of an insured vehicle, he will be considered to be 'occupying' that vehicle within the meaning of the policy, provided he can meet the following *criteria:*

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;

> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Utica, supra* at 336, 473 A.2d at 1009.

¶ 8 Instantly, the trial court explained:

Matthew Petika, in order to qualify for [UIM] benefits under the Transcontinental policy must demonstrate that he is an insured. Under the policy, anyone occupying a covered motor vehicle is an insured. "Occupying" is defined as "in, upon, getting in, on, out or off" a motor vehicle. Such language is common in insurance polices and the question of whether one is an "occupant" of a motor vehicle has been frequently litigated.

(Trial Court Opinion at 2–3) (internal citations omitted). The court reasoned:

In [*Utica*], as in the present case, the plaintiff was operating an employer owned vehicle and was faced with an emergency situation which interrupted his journey, a traffic accident. [The plaintiff] was directed by a police officer to bring his driver's license and owner's card to the officer's police car, which was 97 feet from [the plaintiff's] vehicle. [The plaintiff] gave the requested information concerning him and his vehicle to the officer, who was seated in the police car completing a report. While [the plaintiff] was standing outside the police car, he was struck by an uninsured motorist. The Supreme Court found that all four *criteria* were met by the circumstances presented. The first and fourth

requirements were not discussed in any length in the opinion, and they would apply equally to the present case as they did in [*Utica*]. The [*Utica*] opinion notes that the 97 feet between the driver and his car did not violate the proximity requirement because the driver was mandated by a statutory duty and the dictates of the officer to deliver the requested information to the officer. Likewise, it was apparent that the driver was still vehicle oriented [because] he was giving the officer the owner's card to the vehicle he was driving along with his driver's license.

In a later application of [*Utica*], the Pennsylvania Superior Court [held] that a motorist who left his vehicle to change a tire on a stranded automobile and was hit by a passing motorist was not an "occupant" of his own vehicle because he had become "highway oriented," instead of being oriented to his own vehicle. *Downing v. Harleysville Ins. Co.,* 412 Pa.Super. 15, 602 A.2d 871 (1992).[2]

\* \* \*

The facts [in the present case], however, do not fulfill the orientation requirement. The third requirement [of the *Utica* test] is that "the person must be vehicle oriented rather than highway or sidewalk oriented at the time." As noted above, the plaintiff in [*Utica*] was vehicle oriented because he was providing the officer with documentation per-

---

**2.** In *Downing,* the Court held, *inter alia,* the victim was "highway oriented" once he left his vehicle for the purpose of helping a disabled vehicle. *See also Curry, supra* (holding that supervisor of airport runway-paving project who was injured while conducting impact study outside his vehicle was not "vehicle oriented" as he was not engaged in activity directed towards or in preparation for entering his vehicle). *Compare Frain v. Keystone Ins. Co.,* 433 Pa.Super. 462, 640 A.2d 1352

(1994) (holding victim was "vehicle oriented" because she was preparing to enter her vehicle moments before accident happened); *Fisher v. Harleysville Ins. Co.,* 423 Pa.Super. 362, 621 A.2d 158 (1993) (holding victim was "vehicle oriented" when he was struck while standing in beam of his own vehicle's headlights, because he was conducting activity in preparation to enter his vehicle; *i.e.,* he was removing shells from his hunting rifle so that he could legally enter his vehicle).

taining to his own vehicle.[3] Here, like in *Downing,* [Matthew] Petika was highway oriented as he was signaling and giving directions to oncoming motorists to slow down.[4] **His own vehicle was extraneous to his efforts.**

(Trial Court Opinion at 4–5) (emphasis added). Nevertheless, we appreciate the court's commentary:

> The conclusion reached is logical, but disturbing, because [Matthew] Petika was doing exactly what we would have wanted him to do in an emergency situation. Yet, an emergency exception based upon public policy cannot be incorporated into the existing law absent a pronouncement from our highest court.

(*Id.* at 5).

¶ 9 We hold that Matthew Petika was not "vehicle oriented" when the accident occurred. He became "highway oriented" when he left his vehicle for the purpose of trying to slow and manage oncoming highway traffic. Although he might have intended to return to his vehicle at some later time, his purpose for being outside of his vehicle when the accident occurred is what controls when assessing whether he was "vehicle oriented" under *Utica.* Thus, he did not meet the third prong of the *Utica* test. Therefore, he was not an "insured" for purposes of recovering UIM benefits from the Trancontinental policy.

¶ 10 Based on the foregoing analysis we hold the trial court properly interpreted and applied the *Utica* test and determined Matthew Petika was not an "insured" under the subject policy. Therefore, he was not entitled to UIM benefits under that policy. Accordingly, we affirm the trial court's order entering declaratory judgment in favor of Transcontinental and Swank.

¶ 11 Order entering declaratory judgment affirmed.

---

**3.** The victims in *Frain, supra* and *Fisher, supra* were "vehicle oriented" because they were engaged in an activity in immediate preparation to enter their vehicles.

