June 16, 2017

**Supreme Court**

No. 2016-15-Appeal.
(PC 12-6179)


Amberleigh Hudson          :

          v.          :

GEICO Insurance Agency, Inc., d/b/a     :
GEICO General Insurance Company.


NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2016-15-Appeal.
(PC 12-6179)
(Concurrence begins on Page 16)
(Dissent begins on Page 18)
(Dissent begins on Page 20)

Amberleigh Hudson                    :

v.                    :

GEICO Insurance Agency, Inc., d/b/a          :
GEICO General Insurance Company.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The plaintiff, Amberleigh Hudson (plaintiff), is before

the Supreme Court on appeal from a Superior Court judgment in a jury-waived trial in favor of

the defendant, GEICO Insurance Agency, Inc., d/b/a GEICO General Insurance Company

(defendant or GEICO), in this underinsured motorist (UM) insurance case.  This appeal first

came before the Court on October 25, 2016, pursuant to an order directing the parties to appear

and show cause why the issues raised in this appeal should not be summarily decided.  After

hearing the arguments of counsel and examining the memoranda filed by the parties, we

concluded that cause had been shown and assigned this case to the regular calendar for further

briefing and argument.  We heard oral arguments on April 5, 2017.  For the reasons set forth

herein, we vacate the judgment of the Superior Court.

**Facts and Travel**

The parties in this case entered into an agreed statement of facts. In the early morning hours of February 11, 2012, plaintiff and her then-boyfriend, Gregory Hurst (Hurst), left Murphy's Pub in Providence and headed south on Allens Avenue toward the Amazing Super Store, located on the corner of Allens Avenue and Thurbers Avenue. Hurst was driving his Saab, which was insured by defendant (the GEICO policy), and plaintiff was a passenger. Hurst pulled into the parking lot and parked the vehicle "with a plan to then exit the vehicle and go into the Amazing Super Store." Hurst and plaintiff remained in the vehicle "for a minute or two to talk," when they heard the sound of a crash, signifying an automobile collision, on nearby Allens Avenue. The couple exited the Saab, crossed the parking lot of the Amazing Super Store, and the two southbound lanes of Allens Avenue in order to reach the nearby accident scene. While Hurst called 9-1-1, plaintiff went to the rear of the vehicles to retrieve the license plate numbers. While looking down at a license plate, plaintiff heard somebody yell "car." A third vehicle, traveling north on Allens Avenue, then struck the accident vehicles, adjacent to where plaintiff was standing. She was injured as a result of this impact.

The plaintiff settled a claim against the operator of the vehicle that hit her; however, she has alleged that this did not fully compensate her for her injuries. Consequently, plaintiff filed a claim with defendant seeking relief through Hurst's GEICO policy that insured the Saab. The GEICO policy afforded protection to passengers "occupying" the insured vehicle at the time of the accident. The policy defined "occupying" as "in, upon entering into or alighting from [the vehicle]." The defendant denied plaintiff's claim, on the ground that she was not "occupying" the insured vehicle at the time of her injuries. The plaintiff filed this action in Superior Court on November 30, 2012, and the case was reached for trial on June 17, 2015.

Prior to trial, and based on the agreed statement of facts, the parties filed cross-motions for judgment as a matter of law, stipulating that there were no genuine issues of material fact and that the sole issue before the Superior Court was whether plaintiff was "occupying" the Saab at the time of the accident. In its motion, defendant maintained that plaintiff was precluded from recovery based upon the unambiguous language of the GEICO policy. The plaintiff responded that she was entitled to coverage in light of the broad interpretation of "occupying" set forth by this Court in General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990).[1] In a written decision issued on August 4, 2015, the trial justice rejected defendant's argument that the plain language of the GEICO policy should be the focus of the coverage analysis and, instead, analyzed the term "occupying" in light of the four prongs of Olivier.

The trial justice concluded that plaintiff failed to establish a causal connection between the insured Saab and her injuries and, therefore, could not move past the first prong of Olivier. Although declaring that the failure to meet the first prong of Olivier rendered the remainder of

---

[1] In General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990), this Court applied four criteria set forth by the Pennsylvania Supreme Court in Utica Mutual Insurance Co. v. Contrisciane, 473 A.2d 1005 (Pa. 1984), under which a motorist using an insured vehicle would be considered to be "occupying" that vehicle within the meaning of the policy. Those factors are as follows:

> "(1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> "(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> "(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> "(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." Olivier, 574 A.2d at 1241 (quoting Utica Mutual Insurance Co., 473 A.2d at 1009).

the analysis moot, the trial justice noted that plaintiff also failed to satisfy the third requirement that she was "vehicle oriented" at the time of the injury. Accordingly, the trial justice held that plaintiff could not recover UM benefits under the terms of the GEICO policy because she was not "occupying" the insured vehicle at the time of the incident giving rise to her injuries. A final judgment was entered in favor of defendant on October 9, 2015, from which plaintiff has appealed to this Court.[2]

## Standard of Review

"This case was tried upon a set of stipulated facts. Review of the trial justice's decision in these cases is 'narrowly defined.'" Delbonis Sand & Gravel Co. v. Town of Richmond, 909 A.2d 922, 925 (R.I. 2006) (quoting Hagenberg v. Avedisian, 879 A.2d 436, 441 (R.I. 2005)). "[T]he trial court does not play a fact-finding role, but is limited to 'applying the law to the agreed-upon facts.'" Id. (quoting Hagenberg, 879 A.2d at 441). "[Q]uestions of law and statutory interpretation are reviewed de novo by this Court." Hagenberg, 879 A.2d at 441 (quoting Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001)). Likewise, "[o]ur review of a trial justice's decision on a motion for judgment as a matter of law is de novo." McGarry v. Pielech, 47 A.3d 271, 279 (R.I. 2012) (quoting Medeiros v. Sitrin, 984 A.2d 620, 625 (R.I. 2009)).

## Analysis

Before this Court, plaintiff argues that the trial justice erroneously interpreted the Olivier factors as applied to the facts of this case, and she maintains that, at the time of her injuries, she was "occupying" the insured vehicle. The plaintiff agrees with the trial justice's finding on the second prong of Olivier—that she was in a reasonably close geographic proximity to the insured

---

[2] The plaintiff prematurely filed a notice of appeal on August 20, 2015. This Court, however, will treat the premature notice of appeal as if it had been timely filed after the judgment was entered. See Russell v. Kalian, 414 A.2d 462, 464 (R.I. 1980) (citing Beauvais v. Notre Dame Hospital, 120 R.I. 271, 387 A.2d 689 (1978)).

- 4 -

vehicle at the time of her injuries—but she claims on appeal that the trial justice erroneously interpreted the first prong by applying too strict a standard in considering the existence of a causal connection between the insured vehicle and the accident. As to Olivier's third prong, plaintiff urges the Court to abandon the third prong—which mandates that the injured person be "vehicle oriented" at the time of their injury—suggesting that it is "ambiguous, confusing, and indeed, useless." In regard to the fourth prong, plaintiff submits that this Court should hold that, in light of the mandate in G.L. 1956 § 11-56-1, the rendering of reasonable assistance as a Good Samaritan, constitutes an "essential transaction" for purposes of UM coverage. Section 11-56-1 provides, in pertinent part:

> "Any person at the scene of an emergency who knows that another person is exposed to, or has suffered, grave physical harm shall, to the extent that he or she can do so without danger or peril to himself or herself or to others, give reasonable assistance to the exposed person. Any person violating the provisions of this section shall be guilty of a petty misdemeanor * * *."

The defendant on the other hand contends that plaintiff waived her § 11-56-1 argument by not raising it at trial and that the issue is moot because whether plaintiff was acting under compulsion of the statute when she rendered aid at the scene of the accident is a factual determination which should be reserved for the trial justice. Alternatively, defendant claims that a Good Samaritan can only be "occupying" an insured vehicle if each of the four prongs of Olivier is satisfied and that the trial justice properly found those elements to be lacking in this case.

This is the first occasion on which this Court is called upon to address the particular interplay between § 11-56-1, the Good Samaritan Act, and the term "occupying" a motor vehicle, as defined in an insurance contract. As a threshold issue, we pass on defendant's contention that this seminal argument is waived or otherwise moot. We reject that argument.

- 5 -

"This Court's 'raise-or-waive' rule precludes our consideration of an issue that was not raised or articulated at trial." In re Miguel A., 990 A.2d 1216, 1223 (R.I. 2010) (citing Resendes v. Brown, 966 A.2d 1249, 1254 (R.I. 2009)); see also Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950, 959 (R.I. 1994) ("It is well settled that a party may not 'advance new theories or raise new issues in order to secure a reversal of the lower court's determination.'" (quoting Nedder v. Rhode Island Hospital Trust National Bank, 459 A.2d 960, 963 (R.I. 1983))). We cannot agree with defendant's contention that the raise-or-waive rule precludes this Court from considering plaintiff's argument that she acted as a Good Samaritan pursuant to § 11-56-1. Certainly, plaintiff advanced her Good Samaritan theory to the lower court, as the decision of the trial justice is replete with references to plaintiff's rescue efforts as having been those of a Good Samaritan. Indeed, the trial justice recognized that this Court "has yet to address whether rendering aid as a Good Samaritan" satisfies the requirements of Olivier.

We also reject as meritless defendant's contention that plaintiff's argument is moot and that our resolution thereof would be equivalent to an advisory opinion. "[A] case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." City of Cranston v. Rhode Island Laborers' District Council, Local 1033, 960 A.2d 529, 533 (R.I. 2008) (quoting Seibert v. Clark, 619 A.2d 1108, 1110 (R.I. 1993)). This case is not moot, as both plaintiff and defendant have a continuing stake in whether UM benefits should be afforded to plaintiff under the terms of the GEICO policy.

Therefore, because the issues before the Court are neither waived nor otherwise moot, we turn to the fundamental question before this Court: Whether, in light of § 11-56-1, a Good Samaritan who was injured while rendering roadside aid may be considered to be "occupying"

an insured motor vehicle for purposes of UM coverage under that vehicle's insurance policy. We look first to the term "occupying" as defined in the GEICO policy.

**The GEICO Policy**

In the recent case of Jackson v. Quincy Mutual Fire Insurance Co., No. 2016-19-Appeal, 2017 WL 1843873 (R.I. May 5, 2017), this Court articulated the proper interpretation to be afforded to defined terms of an insurance policy. The approach that controls the interpretation can be classified as either inclusive or exclusive, based on whether the policy clause at issue includes a person other than the named insured within the coverage afforded or seeks to exclude the named insured from the coverage. Specifically, we recognized the "general principle favoring broad coverage" as the cornerstone for the analysis. That principle reads as follows:

> "[W]here the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." Id. at *3 (quoting Peerless Insurance Co. v. Luppe, 118 A.3d 500, 510 (R.I. 2015)).

This declaration serves to harmonize this Court's general rule that "when examining an insurance policy, * * * '[the court] shall not depart from the literal language of the policy absent a finding that the policy is ambiguous,'" Allstate Insurance Co. v. Ahlquist, 59 A.3d 95, 98 (R.I. 2013) (quoting Beacon Mutual Insurance Co. v. Spino Brothers, Inc., 11 A.3d 645, 649 (R.I. 2011)), with the salutary purpose underlying UM provisions, which is "to indemnify an insured motorist for loss when recovery from the uninsured tortfeasor is unavailable." Ladouceur v. Hanover Insurance Co., 682 A.2d 467, 469 (R.I. 1996) (citing Amica Mutual Insurance Co. v. Streicker, 583 A.2d 550, 553 (R.I. 1990)). In this context, the coverage extended under an insurance policy rests, in large part, on the radius of the lens through which we view the policy's

terms. See Jackson, 2017 WL 1843873 at *3 ("[T]he guidepost in determining whether to apply a broad and liberal view of the terms in an insurance policy or whether a strict interpretation of the language is more appropriate is whether the language relates to inclusion of persons within the policy or exclusion of the insured from protection."). Accordingly, when the terms of an insurance policy operate to exclude the insured from the protections of his policy, we look no further than the plain language of the policy. Id. But if the terms of an insurance policy arguably serve to include an individual other than the named insured within the coverage afforded, we employ a broad and liberal view of the policy language. Id.

Before this Court, plaintiff, a passenger and person other than the named insured, seeks to be included within the protection afforded under Hurst's GEICO policy. Accordingly, this Court is obligated to read the terms of the GEICO policy broadly to determine whether, at the time of her injuries, plaintiff was "occupying" the insured Saab. In applying a liberal interpretation to the term "occupying"—defined in the GEICO policy as "in, upon entering into or alighting from"—we are guided by the factors set forth in Olivier, 574 A.2d at 1241.

### Occupancy

Although the facts in this case deviate from those in Olivier and its progeny, see Olivier, supra; see also D'Antuono v. Narragansett Bay Insurance Co., 721 A.2d 834 (R.I. 1998); General Accident Insurance Co. of America v. D'Alessandro, 671 A.2d 1233 (R.I. 1996), in that plaintiff was acting as a Good Samaritan and not a conventional passenger, Olivier remains the governing standard for according a broad interpretation to the terms of an insurance policy. Additionally, we recognize that some jurisdictions require that each of the four factors adopted in Olivier be fulfilled in their entirety in order to satisfy the occupancy requirement. See Petika v. Transcontinental Insurance Co., 855 A.2d 85, 90 (Pa. Super. Ct. 2004) (declining to find

occupancy where the plaintiff failed to satisfy the "vehicle oriented" prong). However, this Court has recognized that the Olivier factors serve only as a guide to employing a broad interpretation of the term "occupying." See D'Alessandro, 671 A.2d at 1235 ("In Olivier * * * we set forth four factors to be considered in assessing whether an insured is 'occupying' a vehicle when an accident occurs * * *." (emphasis added)). In our opinion, such a strict adherence is in stark contrast to the general purpose underpinning the four factors—to extend coverage broadly. Therefore, we are of the opinion that a plaintiff may fail to satisfy a portion of the Olivier criteria, but may nonetheless be "occupying" an insured vehicle for purposes of UM coverage. This determination is intensely fact-driven.

The first prong of Olivier necessitates that there be "a causal relation or connection between the injury and the use of the insured vehicle." Olivier, 574 A.2d at 1241 (quoting Utica Mutual Insurance Co., 473 A.2d at 1009). In Olivier, we interpreted this prong to require some "nexus" between the insured motor vehicle and the claimant's injuries. Id. at 1242 (recognizing the Florida Supreme Court's construction of the phrase as "not meaning 'proximately caused by' but as having a broader meaning that simply required some nexus between the motor vehicle and the injury" (citing Government Employees Insurance Co. v. Novak, 453 So. 2d 1116, 1119 (Fla. 1984))). Additionally, we recognized that, in liberally construing that prong, "it [is] unnecessary that the automobile be the instrumentality of the injury; neither would the type of conduct that causes the injury of necessity be foreseeably identifiable with the normal use of the vehicle." Id.

Applying this construction to the undisputed facts of this case demonstrates a sufficient nexus between the insured motor vehicle and plaintiff's injuries, in that plaintiff was inside the insured vehicle when she heard the collision and exited the vehicle in order to offer assistance at the nearby scene. Even under a narrow construction of the policy language, she was

"occupying" the vehicle when she became aware of the collision and was compelled to render assistance to the victims of the accident—an action that precipitated her unfortunate and significant injuries. See Olivier, 574 A.2d at 1242 ("It was her status as a passenger in the insured vehicle that precipitated the whole unfortunate series of events."). In our opinion, these facts establish a nexus between the insured motor vehicle and plaintiff's injuries sufficient to successfully meet the first prong of Olivier. We are not confronted with a scenario in which plaintiff had already departed the vehicle and was proceeding into the Amazing Super Store when she became aware of the emergency; in that circumstance, a causal connection between her injuries and the insured vehicle might be less certain. However, those are not the facts in this case.

This Court need not address the second prong, requiring that a plaintiff "be in a reasonably close geographic proximity to the insured vehicle," Olivier, 574 A.2d at 1241, because the trial justice found this element to have been satisfied, and the parties do not dispute that finding. Accordingly, we address the third prong, that plaintiff "be vehicle oriented rather than highway or sidewalk oriented at the time [of the injury]." Id.

Although this Court has not had occasion to consider the phrase "vehicle oriented" since Olivier, we take guidance from those courts that have done so. In Etter v. Travelers Insurance Companies, 657 N.E.2d 298 (Ohio Ct. App. 1995), the Appellate Court of Ohio explained that an individual is no longer "vehicle oriented" when the person has "severed his connection with [the vehicle]" or rather, "when [the individual] is on his own without any reference to [the vehicle]." Id. at 301 (a passenger who steps out of a taxicab to pay his fare is still "vehicle oriented" (citing Allstate Insurance Co. v. Flaumenbaum, 308 N.Y.S.2d 447, 463 (N.Y. 1970))); see also In re Estate of Anderson, 720 N.W.2d 124, 128, 129 (Wis. Ct. App. 2006) (holding that decedent, who

- 10 -

had dismounted his motorcycle and "was not demonstrating any intent to get back on the motorcycle," had "severed his relationship with the motorcycle" and therefore, was not "vehicle-oriented").

In considering whether a motorist has severed his or her connection with the vehicle, courts often look to the intent of the individual and the purpose for being outside the vehicle. See Moherek v. Tucker, 230 N.W.2d 148, 152 (Wis. 1975) (looking to claimant's "purpose and intent" in determining whether he severed his relationship with the vehicle); see also Petika, 855 A.2d at 90 (stating that the individual's "purpose for being outside of his vehicle when the accident occurred is what controls when assessing whether he was 'vehicle oriented'").

In Lynn v. Westport Insurance Corp., 258 F. App'x 438 (3d Cir. 2007), the Third Circuit Court of Appeals, applying Pennsylvania law, explained that a person remains "vehicle oriented" if that person had "been in the vehicle, had something occur which required them to exit the vehicle for a brief time before they could continue their journey, had full intention of returning to their vehicle, and [was] struck by another vehicle while performing the action that would allow them to continue their journey." Id. at 442 (citing Petika, 855 A.2d at 85). The court determined that, if an individual's purpose for being outside the vehicle was "the means to the end of getting back in the vehicle and continuing the journey," then that individual remains vehicle oriented. Id.

We are persuaded by the reasoning in the aforementioned cases. It is our opinion that, where a departure from an insured vehicle is incident to a temporary interruption in an otherwise continuing excursion, and upon completion of the occasion causing the brief interruption the individual intends to continue on with his venture, he remains "vehicle oriented." The fact that the vehicle may be parked for a minute or two does not alter this conclusion.

- 11 -

This Court is satisfied that plaintiff's departure from the insured vehicle was incident to a temporary interruption in an otherwise unfinished excursion into the Amazing Super Store and that, upon completion of the occurrence causing the interruption, plaintiff intended to resume her journey. It is undisputed that plaintiff exited the insured vehicle for the purpose of rendering aid to the victims of a motor vehicle collision in close proximity, and for no other purpose. The collision was a mere temporary interruption that compelled plaintiff to immediately exit her vehicle and provide assistance.

The stipulated facts in this case establish that plaintiff intended to exit the vehicle and enter the store; however, she had not yet done so at the time of the collision. Indeed, the couple could, at any time, have abandoned their plans to shop and simply continued on their way. The plaintiff was inside the vehicle at the time of the collision, the driver having parked a minute or two earlier, and exited for the purpose of rendering assistance. Accordingly, under a broad construction of the phrase "vehicle oriented," we are satisfied that plaintiff has met this prong.

There is no general consensus among the courts that have addressed the status of a Good Samaritan in the insurance coverage context. In Aetna Casualty & Surety Co. v. Kemper Insurance Co., 657 F. Supp. 213, 215 (E.D. Pa. 1987), the court determined that two Good Samaritans were "highway-oriented" when they left their insured vehicle for the purpose of helping the driver of a disabled vehicle and were subsequently injured by a passing truck. Likewise, in Downing v. Harleysville Insurance Co., 602 A.2d 871 (Pa. Super. Ct. 1992), the Pennsylvania court held that the plaintiff ceased being "vehicle oriented" and became "highway oriented" when he left his insured vehicle for the purpose of rendering aid to the driver of a disabled vehicle. Id. at 874. However, such a narrow construction is not in accordance with our policy to broadly interpret the factors set forth in Olivier.

We are aware of only one state that has abandoned the third prong—that the individual be "vehicle oriented" rather than highway or sidewalk oriented at the time of the injury—categorizing it as inconsistent with the remainder of the four-part test. See Cherry v. Truck Insurance Exchange, 892 P.2d 768, 772 (Wash. Ct. App. 1995) (finding that the "vehicle oriented" factor "create[s] an internal inconsistency in [the] * * * four-part test"); see also Butzberger v. Foster, 89 P.3d 689, 695-96 (Wash. 2004) (en banc) (abandoning the "vehicle oriented" factor because it "is contrary to the underlying purpose of the other three factors and is unhelpful" and stating, "[a]lthough Rau [v. Liberty Mutual Insurance Co., 585 P.2d 157 (Wash. Ct. App. 1978),] created the vehicle oriented factor, the opinion itself does not explain how a vehicle oriented factor helps illuminate the reasonable expectations of the insured or suggest a method for its application"). Although this may be the road of the future, we are not inclined to embark upon it at this time.

In regard to the fourth prong, that the individual be engaged in a transaction essential to the use of the vehicle at the time of his or her injuries, we are persuaded by plaintiff's argument that, in light of § 11-56-1, a willingness to render aid at the scene of a motor vehicle collision as a Good Samaritan, is inherently part of the use of a motor vehicle in this state. In Butzberger, 89 P.3d at 697,[3] the Supreme Court of Washington stated: "Rescuing a stranded driver who is injured or in peril is essential to the continued use of the vehicle, as the vehicle cannot continue to its destination until the rescue has been accomplished." The court reasoned that "a Good

---

[3] In Butzberger v. Foster, 89 P.3d 689, 698 (Wash. 2004) (en banc), the court concluded that the Good Samaritan was entitled to recover UM benefits from the policy insuring the vehicle he was driving, as well as the policy insuring the disabled vehicle that he was assisting at the time of his injuries. In the case at bar, this Court is faced with a claim for recovery only under the terms of the GEICO policy insuring Hurst's Saab, and not the vehicles involved in the accident. Our holding today should not be interpreted as applying to an insurance policy covering a disabled vehicle.

Samaritan is unable to ignore the sight of a perilously stranded motorist" and thus, held that "a rescue effort to assist an occupant of another vehicle is a transaction essential to the use of [the rescuer's] vehicle." Id. at 697, 698.

We are persuaded by this reasoning. In light of § 11-56-1, not only is a Good Samaritan "unable to ignore" the call of distress at the scene of an accident, but he or she is statutorily required to render reasonable assistance. Although we have yet to address the affirmative duty imposed upon motorists under § 11-56-1, we are not called upon to do so at this time. We need only look to the time-honored observation of Justice Cardozo for support for our holding: "Danger invites rescue. The cry of distress is the summons to relief. * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man." Wagner v. International Railway Co., 133 N.E. 437, 437, 438 (N.Y. 1921). Moreover, "[t]he law has long recognized that seeing a person injured or in peril compels those called to follow the example of the Good Samaritan to provide assistance." Butzberger, 89 P.3d at 698 (citing Gardner v. Loomis Armored Inc., 913 P.2d 377, 381 (Wash. 1996) (en banc)). Consequently, the "public policy of encouraging citizens to save others from life threatening situations" dictates that Good Samaritans should be protected. Gardner, 913 P.2d at 381.

Certainly, the law of this state recognizes the value of encouraging the reasonable efforts of Good Samaritans. In Ouellette v. Carde, 612 A.2d 687, 689-90 (R.I. 1992), this Court considered the public policy concerns supporting the common law rescue doctrine—a canon codified in part by § 11-56-1.[4] In Oullette, 612 A.2d at 690, we stated that the "law places a

---

[4] "The rescue doctrine is a rule of law holding that one who sees a person in imminent danger caused by the negligence of another cannot be charged with contributory negligence in a nonreckless attempt to rescue the imperiled person." Ouellette v. Carde, 612 A.2d 687, 689 (R.I. 1992) (citing 57A Am.Jur.2d Negligence § 1079 (1989)).

premium on human life, and one who voluntarily attempts to save a life of another should not be barred from complete recovery." This Court declared that, "[t]he [rescue] doctrine was developed to encourage rescue." Id. at 689. With respect to § 11-56-1, we likewise are confident that this statute is a declaration of policy by the Legislature to spur rescue. Accordingly, in the face of a long-standing public policy to encourage the rescue of others from perilous situations, we are satisfied that a motorist who exits his or her vehicle in order to provide reasonable assistance to victims at the scene of an accident is engaged in a transaction essential to the use of that vehicle.[5]

We note that, at oral argument, defendant suggested that a Good Samaritan need not exit his or her vehicle in order to render aid. With the exception of making a 9-1-1 call, we can hardly envision a circumstance in which a Good Samaritan could remain in his or her vehicle while simultaneously rendering reasonable assistance. An effort to administer assistance to victims at the scene of an accident necessitates that the Good Samaritan exit his or her vehicle to attempt rescue efforts.

The facts before this Court unquestionably illustrate that plaintiff exited the vehicle to render aid to the victims of the collision on Allens Avenue. Therefore, by leaving the insured vehicle in order to administer rescue efforts, plaintiff was engaged in a transaction essential to

---

[5] This Court acknowledges that some courts have reached opposite conclusions when considering whether a motorist rendering aid at the scene of an accident is engaged in a transaction essential to the use of a motor vehicle. See Aetna Casualty & Surety Co. v. Kemper Insurance Co., 657 F. Supp. 213, 215 (E.D. Pa. 1987) (concluding that motorists who exited their vehicle for the purpose of rendering aid to a disabled vehicle were not engaged in a transaction essential to the use of their vehicle); see also Downing v. Harleysville Insurance Co., 602 A.2d 871, 874-75 (Pa. Super. Ct. 1992) (motorist who was injured when he was struck by a third party while aiding a disabled vehicle was not engaged in a transaction essential to the use of his own vehicle). However, in light of G.L. 1956 § 11-56-1 and the public policy of this state, we decline to follow this line of cases.

the use of the insured vehicle sufficient to satisfy the fourth prong of <u>Olivier</u>, 574 A.2d at 1241. To hold otherwise would be contrary to the public policy of this state.

Accordingly, under our reading of <u>Olivier</u>, in the context of this case, we are of the opinion that the plaintiff, who was injured while rendering roadside aid as a Good Samaritan, was occupying the insured Saab for purposes of UM coverage. Therefore, the plaintiff is entitled to recover under the terms of the GEICO policy.

### Conclusion

For the reasons set forth herein, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court for further proceedings consistent with this opinion.

**Justice Flaherty, concurring.** I am in full agreement with, and heartily join, the conclusion reached by the majority in this case.[1] At the same time, however, I am constrained to express my belief that this Court, and other courts, have struggled to determine whether the facts of each case, including the one before us, fit or can be forced to fit within the four prongs first found to be "persua[sive]" in <u>General Accident Insurance Co. of America v. Olivier</u>, 574 A.2d 1240, 1241 (R.I. 1990). In my opinion, such exercises take on a life of their own and should be abandoned in favor of a simpler approach.

It cannot be gainsaid that, even in the face of a syllogistic prong analysis, the dominant factors in these cases have been considerations of public policy.

In <u>General Accident Insurance Co. of America v. D'Alessandro</u>, 671 A.2d 1233, 1235 (R.I. 1996), while struggling with the definition of "occupying" as limned by contractual

---

[1] Although I do not agree with the dissenting justices, I feel compelled to acknowledge their scholarly and well-reasoned opinions in this close and difficult case.

language contained in the insurance policy and the <u>Olivier</u> factors, this Court nonetheless sailed through the fog to say "as a matter of public policy, protection should be given the named insured in such policies against economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles." <u>Id.</u> (quoting <u>Malo v. Aetna Casualty and Surety Co.</u>, 459 A.2d 954, 956 (R.I. 1983)).

Very recently, in <u>Jackson v. Quincy Mutual Insurance Co.</u>, No. 2016-19-Appeal, 2017 WL 1843873, at *3 (R.I. May 5, 2017), the Court said

> "[W]here the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." <u>Id.</u> (quoting <u>Peerless Insurance Co. v. Luppe</u>, 118 A.3d 500, 510 (R.I. 2015)).

It could not be clearer that this Court, and many other courts as well, view factual scenarios and insurance contract verbiage through the prism of public policy. That said, in future cases, I would jettison the somewhat unwieldy and difficult to understand <u>Olivier</u> factors in favor of an approach that inquires "under the totality of the circumstances, was the plaintiff sufficiently connected to the motor vehicle to be considered to be occupying it?"[2]

It is my opinion that, after agonizing over the <u>Olivier</u> factors and trying mightily to see which may fit in a given case, courts conclude with decisions that are based primarily on public policy considerations.

That said, I join in the reasoning and conclusion of the majority, confident that, by any standard, it has reached the correct result.

---

[2] For instance, how many <u>Olivier</u> factors need a plaintiff overcome? Two? Three? Four weakly but, in the alternative, two strongly?

**Chief Justice Suttell, dissenting.** The question presented in this appeal is really quite simple. Essentially, it boils down to: Where do you draw the line? At what point does the causal connection between an injured plaintiff and the insured motor vehicle become too attenuated to hold that the plaintiff was "occupying" the vehicle at the time of the injuries?

The majority raises a compelling and noble justification for extending coverage to include the plaintiff in this case. Clearly, Ms. Hudson's actions were commendable. It is the statutory policy of this state to encourage the rendering of reasonable assistance at the scene of an emergency.[3] Moreover, G.L. 1956 § 11-56-1 purports to punish the failure to do so as a petty misdemeanor in certain circumstances.[4] Nevertheless, the extent of uninsured motorists (UM) coverage is a matter of contract to be interpreted in accordance with the plain and ordinary meaning of the terms of the insurance policy, Henderson v. Nationwide Insurance Co., 35 A.3d 902, 906 (R.I. 2012), in light of "what the ordinary reader and purchaser * * * would have understood them to mean." Goldstein v. Occidental Life Insurance Co. of California, 108 R.I. 154, 159, 273 A.2d 318, 321 (1971).

In the case under review, Ms. Hudson, as a passenger in the insured vehicle, was entitled to coverage under the UM provision of the policy "while occupying" the insured automobile. The policy defines "occupying" as "in, upon entering into or alighting from." Because plaintiff relies upon the operative terms of the policy while seeking to include Ms. Hudson within the

---

[3] See Ouellette v. Carde, 612 A.2d 687, 689 (R.I. 1992) (explaining that the rescue doctrine, which grants immunity to certain voluntary rescuers against contributory negligence claims, "was developed to encourage rescue"); see also G.L. 1956 § 5-54-20.1; G.L. 1956 §§ 9-1-27; 9-1-27.1; 9-1-34 (granting immunity from claims of ordinary negligence to certain individuals who voluntarily or gratuitously render aid in an emergency).

[4] I take no position on the questions of whether G.L. 1956 § 11-56-1 applies to the facts of this case or indeed whether it is enforceable at all.

ambit of coverage, this Court employs a broad and liberal interpretation of the policy language. Accordingly, the Court applies the four factors set forth in General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990) when analyzing whether a non-named "insured" is "occupying" an insured motor vehicle for purposes of UM coverage.

The first prong of the Olivier criteria is whether "there is a causal relation or connection between the injury and the use of the insured vehicle." Olivier, 574 A.2d at 1241. This inquiry is further refined in Olivier by this Court's finding as persuasive an opinion of the Supreme Court of Florida which construed policy language "arising out of the use of a motor vehicle" as simply requiring "some nexus between the motor vehicle and the injury." Government Employees Insurance Co. v. Novak, 453 So.2d 1116, 1119 (Fla. 1984). In my judgment, however, the nexus required must be a reasonable one. In fact, this Court in Olivier found there to be a "substantial nexus * * * between the decedent's status as a passenger in the insured motor vehicle and her being attacked * * *." Olivier, 524 A.2d at 1242.[5]

Under the circumstances of this case, I do not believe that Ms. Hudson has established a causal relation between her injuries and the use of the insured vehicle. Rather, I am in agreement with the trial justice that "[w]hen Ms. Hudson heard the crash and was alerted to the collision, her presence inside the insured vehicle was merely incidental to the events that followed." Ms. Hudson and her companion had arrived at the Amazing Superstores and had parked the vehicle. Presumably, the Amazing Superstores was not their final destination that evening; nevertheless, they had in fact completed that segment of their overall journey.

---

[5] The Supreme Court of Florida in Novak also concluded that there was a "highly substantial connection between [the injured party's] use of the motor vehicle and the event causing her fatal injury." Government Employees Insurance Co. v. Novak, 453 So. 2d 1116, 1119 (Fla. 1984).

A salient consideration in circumstances in which the injured party is a so-called Good Samaritan, I believe, ought to be whether the injured party was required to interrupt her or his travel in order to render assistance at the scene of an emergency. See Butzberger v. Foster, 89 P.3d 689, 698 (Wash. 2004) (en banc). That was not the situation in the case at bar. Ms. Hudson, rather, had reached her interim destination. She was sitting in a parked car when she heard the sound of the accident; whether that was one or two minutes or one or two hours after the car was parked matters not. As laudable as it is to provide her coverage, to do so requires, in my view, an unreasonable expansion of the policy language.

Accordingly, I do not believe that the plaintiff has established "a causal relation or connection between the injury and the use of the insured vehicle." I would, therefore, affirm the judgment of the Superior Court.

**Justice Indeglia, dissenting.** Although I agree with the thrust of the Chief Justice's dissent, I write separately to address points that I find worthy of additional discussion. Indeed, "[o]ne can imagine few more sympathetic litigants than * * * a 'Good Samaritan' who stopped his [or her] car * * * to help a stranded motorist. * * * It is natural to sympathize with a litigant who has suffered harm caused by someone who cannot pay the consequences. But if sympathy were a rule of contract construction, there would soon be no law of contracts left."[1] While I understand that in deciding this particular case, the majority may have been moved by sympathy for the plaintiff, who sustained injuries while offering aid to another, I am nevertheless convinced that it has extended our jurisprudence well beyond our prior holdings and those of other jurisdictions on the meaning of "occupying"; and, thus, I feel obliged to dissent.

---

[1] United States Fidelity and Guaranty Co. v. Goudeau, 272 S.W.3d 603, 605 (Tex. 2008).

- 20 -

With all due respect to the majority, I cannot fathom that plaintiff in this case was occupying the insured vehicle such that she was entitled to UM coverage. Beyond the majority's ultimate conclusion, I take particular issue with its analysis of the first and third prongs of the standard articulated in General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990), and its use of G.L. 1956 § 11-56-1[2] to conclude that the fourth prong was met.

As an initial matter, I diverge from the broad lens through which the majority views the Olivier factors. I have not come across a single case that corroborates the majority's declaration that "the general purpose underpinning the four [Olivier] factors" is "to extend coverage broadly."[3] Instead, it appears that the majority conflates the idea that we broadly interpret the term "occupying" vis-à-vis a passenger in an insured vehicle[4] with the conclusion that we sweepingly interpret each individual prong of the Olivier test. This logical leap is troubling; and, because the starting point from which the majority broadly analyzes each factor is defective, what follows is equally unsound. In my view, instead of analyzing each factor broadly, the

---

[2] As an aside, I find misleading the majority's characterization of G.L. 1956 § 11-56-1 as a "Good Samaritan" statute. The statute is entitled "Duty to assist," and unlike "Good Samaritan" statutes that immunize persons from liability for voluntarily and gratuitously rendering aid, § 11-56-1 imposes criminal liability for the failure to render assistance in certain circumstances. Thus, despite the majority's repeated references to § 11-56-1 as a "Good Samaritan" statute, this is a misnomer. See Dan B. Dobbs et al., The Law of Torts § 405 n.25 (2d ed. 2016) ("While some label these 'good Samaritan' statutes, they are more properly called 'bad Samaritan' statutes. 'Good Samaritan' statutes immunize from negligence liability those defendants who do assist a plaintiff in distress * * * [whereas bad Samaritan statutes] place a defendant under some form of legal duty to assist and provide for criminal or civil liability for non-assistance.").

[3] To be certain, the one case that the majority cites for this proposition comes up short. Beyond the language cited not verifying this assertion, the case cited, General Accident Insurance Co. of America v. D'Alessandro, 671 A.2d 1233, 1235 (R.I. 1996), actually cuts against the majority's claim because there the Court held that the defendant was not "occupying" her uninsured vehicle. Id.

[4] "[T]his Court accorded a broad and liberal interpretation to the term 'occupying' as it related to a passenger in an insured vehicle * * * ." Jackson v. Quincy Mutual Fire Insurance Co., No. 2016-19-Appeal, 2017 WL 1843873, at *3 (R.I. May 5, 2017) (describing this Court's holding in General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240, 1243 (R.I. 1990) (emphasis added)).

- 21 -

majority largely overrides the Olivier test altogether with an approach that seeks to simply reward a "Good Samaritan" by "extend[ing] coverage broadly."

I am moreover convinced that, although well-intentioned, the majority's attempt to clarify the law in this arena only further muddied the water for future litigants. The trial justice interpreted Olivier to require that each prong be met for plaintiff to recover; however, the majority's opinion fails to clarify what our law requires to satisfy the Olivier test. The majority's declaration that "a plaintiff may fail to satisfy a portion of the Olivier criteria, but may nonetheless be 'occupying' an insured vehicle for purposes of UM coverage" is equivocal at best and only adds confusion to an otherwise murky legal standard. Indeed, the majority's opinion leaves litigants uncertain about whether it is necessary to satisfy each Olivier prong to fulfill its standard.

Additionally, I deem problematic the majority's analysis of Olivier's first prong. Application of the majority's reasoning makes it difficult to envision a circumstance that could not meet the liberal "some nexus" standard for "a causal relation or connection between the injury and the use of the insured vehicle." Therefore, based on its nearly limitless scope, I am convinced that it is time to reconsider the broad "some nexus" test that this Court adopted in Olivier, citing to Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984). Novak did not involve UM coverage; rather, it involved personal injury protection (PIP) insurance. Id. at 1117. Notably, when given occasion to apply the broader "some nexus" standard to cases involving UM insurance, that very same court explicitly, and in my opinion correctly, declined to do so. See Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347, 348-49 (Fla. 1989) ("However, we are unwilling to apply the liberal PIP interpretation of nexus

to claims for UM benefits.").[5]   Therefore, I believe that the trial justice's use of a "but for" standard when analyzing the first prong, although not this jurisdiction's law, was more appropriate because this Court should have never extended the broader "some nexus" test to the UM context in the first instance.[6]

The majority's conclusion that the circumstances of this case satisfy the first prong, to me lowers the bar so much that it is hard to imagine a scenario where a causal connection would not be found.  As such, I would have affirmed the trial justice's finding in this respect.  See, e.g., Gilbertson v. State Farm Mutual Auto Ins., 845 F.2d 245, 248 (10th Cir. 1988) ("The mere fact that the use of the vehicle preceded the accident is not sufficient to establish the causal connection. * * * There is hardly any activity in our society which is not preceded by the use of an automobile."); Ulrich v. United Services Automobile Association, 839 P.2d 942, 949 (Wyo. 1992) ("[B]ecause the use of an automobile has 'some nexus' to almost any action undertaken in society, it is our persuasion that the test does not accurately reflect the intent of the parties regarding the scope of UM coverage.").

I also deviate from the majority's analysis of the third prong.  It relies, in part, on Lynn v. Westport Insurance Corp., 258 F. App'x 438, 442 (3d Cir. 2007), an opinion in which the Third Circuit Court of Appeals held that a person is "vehicle oriented" if that person "had been in the vehicle, had something occur which required them to exit the vehicle for a brief time before they could continue their journey, had full intention of returning to their vehicle, and were struck by

_____

[5] Curiously, in adopting the "some nexus" standard from the Florida Supreme Court in Olivier, this Court did not acknowledge Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347 (Fla. 1989) and its adverse holding, which that same court handed down just one year before this Court decided Olivier.
[6] We find additional support for the "but for" test in Butzberger v. Foster, 89 P.3d 689, 694 (Wash. 2004) (en banc)—a case that is heavily cited by the majority with respect to the fourth prong but is notably absent from the majority's discussion of the first prong.

another vehicle while performing the action that would allow them to continue their journey." The majority then adopts this reasoning for determining whether a person is vehicle oriented.

To fit plaintiff within this criterion and conclude that she was vehicle oriented, the majority holds that "plaintiff's departure from the insured vehicle was incident to a temporary interruption in an otherwise unfinished excursion into the Amazing Super Store and that, upon completion of the occurrence causing the interruption, plaintiff intended to resume her journey." This conclusion, however, is not grounded in the facts, and it is a stretch to conclude that plaintiff interrupted her travel to assist the victim and "had full intention" to return to the vehicle. See Lynn, 258 F. App'x at 442. The plaintiff was not en route to her destination (the Amazing Super Store) when her travel was interrupted by her rescue attempt. Rather, she had already arrived at the store and was merely waiting idly in the vehicle before entering. The only remaining leg of her journey was from the parked vehicle into the Amazing Super Store, and such a journey was pedestrian, not vehicular. As a result, rather than return to her vehicle, plaintiff could access what awaited her in the Amazing Super Store by foot.

In analyzing the fourth prong of the Olivier test, the majority relies on § 11-56-1. Specifically, it maintains that "in light of § 11-56-1, a willingness to render aid at the scene of a motor vehicle collision as a Good Samaritan, is inherently part of the use of a motor vehicle in this state." In this respect, the majority also states that "[a]lthough we have yet to address the affirmative duty imposed upon motorists under § 11-56-1, we are not called upon to do so at this time." Yet, it appears that ultimately it has done just that in concluding that § 11-56-1 was a declaration of public policy to encourage the rescue of others from perilous situations. This statute, which to me is replete with vagueness, does not even mention motor vehicles. True, it

may apply in the automobile accident setting, but it is just as applicable to a pedestrian finding someone lying in a pool of blood at the bus stop in Kennedy Plaza.

Also with respect to the fourth prong, I question the majority's reliance on <u>Butzberger v. Foster</u>, 89 P.3d 689, 697 (Wash. 2004) (en banc), in which the Supreme Court of Washington held that "a rescue effort to assist an occupant of another vehicle is a transaction essential to the use of that vehicle." While the majority cites to <u>Butzberger</u> for that proposition, it fails to note that the Supreme Court of Washington narrowly confined this holding to "when a motorist <u>interrupts</u> his or her travel to rescue a victim in another vehicle * * * ." <u>Id.</u> at 698 (emphasis added). Hence, the conclusion in <u>Butzberger</u> was based on the fact that Butzberger intended to proceed in his vehicle and continue his travel after concluding his rescue effort.[7] <u>Id.</u> at 697-98.

As noted above, I am perplexed at how the majority could maintain that plaintiff interrupted her travel to assist the victim. Unlike those cases where the injured party was in a vehicle involved in an accident or came upon the accident, like <u>Butzberger</u>, here plaintiff and the vehicle she was in was off the road in a parking lot for one to two minutes intending to go into the Amazing Super Store when she heard the collision. The plaintiff had already arrived at her destination and was sitting in the parked vehicle before the accident. This is a critical distinction that the <u>Butzberger</u> court relied on to distinguish <u>United States Fire Insurance Co. v. Parker</u>, 463 S.E.2d 464, 466 (Va. 1995), in which the Supreme Court of Virginia held that Parker was not engaged in a transaction essential to the use of the vehicle. The <u>Butzberger</u> court noted that, while both Parker and Butzberger used their vehicles as a means of transportation to work, "Butzberger was struck and killed while still in the process of driving to work," whereas "Parker

---

[7] Although I agree with the majority's averment that whether an individual is "occupying" for these purposes is "intensely fact-driven," it appears that the majority has failed to heed its own advice.

on the other hand had already arrived at her jobsite, parked the insured truck, and was working when she sustained her injuries * * * ." Butzberger, 89 P.3d at 698 n.6. Accordingly, in this "intensely fact-driven" inquiry, Butzberger acknowledged the significant distinction between a person en route to his or her destination who is interrupted before arriving there and one who already arrived at the destination and parked the vehicle, like plaintiff. Because plaintiff fell into the latter category, I am further convinced that she was not engaged in a transaction essential to the use of the vehicle.

Consequently, this case calls to mind the sound guidance of Sir William Blackstone that "the liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law[.] * * * And law, without equity, though hard and disagreeable, is much more desirable for the public good than equity without law * * * ."[8] Although I recognize the plaintiff's praiseworthy deed in coming to the aid of a person in distress, I am ultimately persuaded that the following language cited by the trial justice in her decision should have carried the day: this Court "is not at liberty to create bad law to cover good persons. If the Court were to do so, it would right one wrong, [the plaintiff's] injury, while creating another: holding [the defendant] responsible even when the law said otherwise."[9] For these reasons, I must respectfully dissent.

---

[8] 1 William Blackstone, Commentaries *62.
[9] Greenwich Insurance Co. v. Hall, Civil No. 11-66-ART, 2012 WL 5868915, at *3 (E.D. Ky. Nov. 20, 2012).

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Amberleigh Hudson v. GEICO Insurance Agency, Inc., d/b/a GEICO General Insurance Company. |
| **Case Number** | No. 2016-15-Appeal. (PC 12-6179) |
| **Date Opinion Filed** | June 16, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiff: Joseph J. Altieri, Esq. For Defendant: Mark P. Dolan, Esq. Mark P. Dolan, Jr., Esq. |